# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOEL PORTER** | **CIVIL ACTION NO.: 3:15-CV-00069** |
| **PLAINTIFF** | |
| **VERSUS** | |
| **JUSTIN BECNEL AND** | **JUDGE: JOHN W. DEGRAVELLES** |
| **BRANNON OGDEN** | |
| **DEFENDANTS** | **MAGISTRATE: RICARD L. BOURGEOUS** |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON LIABILITY AS TO DEFENDANT JUSTIN BECNEL

**MAY IT PLEASE THE COURT:**

Before the Court is a claim by Plaintiff Joel Porter that he was falsely arrested and imprisoned in violation of his Fourth, Fifth and Fourteenth Amendment rights by Defendants obtaining an arrest warrant for Plaintiff without probable cause and without disclosing to the judge considering the warrant application facts known to them or easily discoverable which were completely and totally exculpatory. Pendant with this claim is a state claim for false arrest and state claims for intentional infliction of mental and emotional distress.

Plaintiff moves for summary judgment to establish the following facts:

1. Plaintiff was arrested by defendant Justin Becnel and Brannon Ogden on April 16, 2014, pursuant to an arrest warrant that was issued the same day the warrant was requested by defendant Justin Becnel.[1]

---

[1] A copy of the warrant is attached as Exhibit A

2. The April 16, 2014 warrant for the arrest of Plaintiff obtained by defendant Becnel did not state probable cause and in fact did not allege any of the elements of the offense for which Becnel sought a warrant to have Plaintiff arrested.

3. At the time of the arrest Becnel was acting under color of law by virtue of the fact that he was employed as a Baton Rouge police officer and was in the course and scope of his duties.

4. On April 16, 2014, at the time that Plaintiff was arrested his right to be free from being arrested pursuant to a warrant that did not state probable cause was an established right under both the Louisiana State Constitution and Constitution of the United States.

5. The defendant Becnel is not entitled to qualified immunity.

6. That the arrest of Plaintiff violated Plaintiff's 4th Amendment right to be free from deprivation of his liberty without a warrant based on probable cause.

**BACKGROUND**

Plaintiff sued another Baton Rouge police officer, John Dauthier for violating his civil rights on January 17, 2014. Among the claims against Dauthier was that he had defamed the plaintiff in a March 7, 2013 search warrant which Dauthier resulting in negative press coverage of Plaintiff.

A woman named Ashley Smith, whom Plaintiff had represented on a couple of small legal matters, contacted Dauthier after the press coverage saying she had information about the cold case and allegedly also accused Plaintiff of stalking her. After an interview no basis was found to take any action against Plaintiff as a result of any statement or accusation of Smith.[2]

---

[2] Becnel deposition dated November 24, 2015 p 14 attached as Exhibit B

Ashley Smith was, however, encouraged by Baton Rouge City Police officers to seek a Temporary Restraining Order against Plaintiff even though BRPD officers found no merit to her complaint.[3] She filed such an application for a TRO on April 7, 2014 in Baton Rouge City Court. The application received much publicity. Smith made this allegation as a part of a scheme to obtain money from Mr. Porter, whom she knew to be a high profile attorney.

The restraining order was issued April 7, 2014, and a few days later Smith again contacted the police department (John Dauthier), this time stating that there had been a violation of the temporary restraining order. Dauthier in turn contacted the defendant Becnel who was assigned to investigate Smith's claim that the temporary restraining order was violated.[4]

Becnel made no effort to investigate the original complaint of Smith that she was being stalked by Plaintiff. Had he done so he would have quickly learned that Ashley Smith's story was a total and absolute lie. Among the readily determinable facts was that Smith accused Plaintiff of stalking her in a car with which he had no connection and that Smith accused Plaintiff of stalking her in Beaumont, Texas while Plaintiff was indisputably and documented in court in Baton Rouge trying a case.

Becnel was provided no evidence to support Smith's allegations[5] and he did little or no investigation of Smith's allegation that the protective order was violated. On April 16, 2014, defendant Becnel obtained a warrant for the arrest of Plaintiff[6] accusing Plaintiff of violating the restraining order and then used this warrant to arrest Mr. Porter[7] in the parking lot across from the 19th JDC in front of his professional colleagues and the general public.[8] From there, Plaintiff was

---

[3] Becnel deposition dated November 24, 2015 p 14
[4] Becnel deposition dated November 24, 2015 p 11-12
[5] Becnel deposition dated November 24, 2015 p 13
[6] Becnel deposition dated November 24, 2015 p 27
[7] Becnel deposition dated November 24, 2015 p 41
[8] Becnel deposition dated November 24, 2015 p 42

3

taken to Parish Prison and strip searched before being released from the misdemeanor charge after posting a small bond, though many hours after the bond was fixed.[9]

**THE ARREST WARRANT DID NOT STATE PROBABLE CAUSE**.

Plaintiff brings his claim under 42 USCA 1983 to address a violation of his civil rights. "Section 1983 imposes liability upon those who while acting under the color of state law, deprive a person 'of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S. Ct. 1353, 137 L.Ed.2d 569 (1997). While Section 1983 "is not itself a source of substantive rights, it provides a method for vindicating federal rights." *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S. Ct. 1827, 118 L.Ed.2d 504 (1992).

To state a claim under § 1983 a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Victoria W. v. Larpenter,* 369 F.3d 475, 482 (5th Cir.2004). A plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards,* 51 F.3d 577, 583 (5th Cir.1995).

In the instant case Plaintiff's rights at issue arise under the 4th Amendment to the Constitution which guarantees that Plaintiff is free from deprivation of his liberty without a warrant based upon probable cause. An unreasonable seizure in violation of the 4th Amendment gives rise

---

[9] Affidavit of Joel Porter attached as Exhibit C

4

to § 1983 liability. *Brower v. County of Inyo,* 489 U.S. 593, 599, 109 S. Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

While defendant Ogden actually participated in the arrest of plaintiff on April 16, 2014, plaintiff brings this motion solely as to defendant Becnel as he acknowledges responsibility for obtaining and enforcing the warrant for Plaintiff's arrest at issue.

There was no probable cause for the issuance of this arrest warrant and that Defendant Becnel could not have reasonably believed that probable cause existed. The warrant does not establish any reasonable belief that Plaintiff committed even a single element of the offense.

The April 16, 2014 arrest warrant and its application are attached as Exhibit A.

The April 16, 2014 arrest warrant states only the following facts:

1. That Ashley Smith contacted police on April 15, 2014[10] stating that there had been a violation of a temporary restraining order issued in her favor.

2. That Ashley Smith stated she was contacted by a female, who identified herself as Plaintiff's lawyer, who requested the identity of the witnesses she could call at a hearing set in the matter in which the TRO was issued and that Smith stated to the caller that she was going to hire a lawyer.

3. That Ashley Smith stated she was contacted a second time by "defendant's lawyer," but did not answer it.

4. That Ashley Smith received a text message from "defendant's lawyer" advising that if Smith did not prevail at the hearing "defendant" would seek costs an attorney fees.

---

[10] The arrest warrant actually states in a general opening paragraph that the date of the violation was April 12, 2014 however the warrant application does not assert any facts occurring on that date.

5

5. That detectives reviewed the order issued in proceeding 1403285, Division B and noted that the order would not expire until April 17, 2014 and that it prohibited contacting Smith personally, electronically, by phone or through a third party.[11]

The fact that the April 16, 2014 arrest warrant was wrongly issued was quickly established in the resulting legal proceedings. After plaintiff was arrested by defendant Becnel, an emergency hearing was held the afternoon of April 16, 2014, before the Honorable Yvette Alexander in Baton Rouge City Court, the judge who issued the April 7, 2014 restraining order. At this hearing, Judge Alexander determined that Mr. Porter had not violated the restraining order and that the factual basis for the claimed violation, that his attorney contacted Ashley Smith for purposes of ascertaining her witness list for an upcoming hearing, was not a violation.[12]

On May 12, 2014 there was a hearing on the merits of Smith's suit in which she obtained the restraining order before the Honorable Luke Lavergne and the suit for the protective order was dismissed and Mr. Porter was awarded costs for having to defend the suit. [13]

Defendant Becnel was very familiar with the requirements of the law both civil and criminal under which he sought the April 16, 2014 arrest warrant. He testified he was trained in handling violations of protective orders and the criminal domestic relations statutes.[14] There is no serious argument that the April 16, 2014 arrest warrant stated probable cause. The warrant identifies Plaintiff Joel Porter as a black male but states that the calls came from an unidentified female. No act on the part of Mr. Porter is stated in the April 16, 2014 arrest warrant other than the unstated, but inferred, fact that he hired a lawyer to represent him. The only other facts stated

---

[11] The warrant was not supplemented with any testimony when presented for consideration. Becnel Deposition dated November 24, 2015 p. 33.
[12] Becnel deposition dated November 24, 2015 p. 38
[13] Becnel deposition dated November 24, 2015 p. 39-40
[14] Becnel deposition dated November 24, 2015 p. 25

6

in the warrant application about Mr. Porter were that the female caller stated that he would seek court costs and attorney fees and that Mr. Porter is stated to have known that Smith was financially unstable without even providing the basis for that knowledge. The warrant application does not show facts which would establish that the caller actually was Mr. Porter's lawyer nor does it show facts supporting that Mr. Porter knew of the call was being made. In his deposition taken in this matter Becnel stated that Smith named the attorney[15] even though he did not put the name in the warrant.[16] Becnel testified that Smith "suspected" that Mr. Porter had told the attorney to contact her based on knowledge about Smith's finances that the attorney had but he did not contact the attorney to verify this claim by Smith nor did he attempt to confirm that the attorney even represented Mr. Porter.[17] Becnel admitted that the only evidence Smith had that Mr. Porter was involved in the phone call was that she "suspected" so based on language the lawyer used in the call.[18]

While it is possible to prosecute a person as a "principle" to a crime when the actor is another person, proof of a shared mental state to commit the crime is required.

> A defendant, however, may be convicted as a principal only for those crimes for which he has the requisite mental state. *State v. Brooks,* 505 So.2d 714, 717 (La.1987), *cert. denied,* 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Only those persons who knowingly participate in the planning or execution of a crime may be said to be "concerned" in its commission, thus making them liable as principals. *State v. Knowles,* 392 So.2d 651 (La.1980).
>  *State v. Wright*, 834 So. 2d 974,  2001-322 (La. 12/4/2002) p. 983

The only mental state of Mr. Porter which can even be inferred from facts stated in the warrant application is the intent to hire a lawyer though the application does not actually show, and officer Becnel did not do any investigation to determine, that Mr. Porter actually hired the

---

[15] Becnel deposition dated November 24, 2015 p. 23
[16] This fact is reflected by the warrant application
[17] Becnel deposition dated November 24, 2015 p. 24
[18] Becnel deposition dated November 24, 2015 p 23-24

7

caller as his lawyer. Becnel did not check the court record to see if the person identified as the lawyer, Donna Grodner, actually was Mr. Porter's lawyer and he did not contact Ms. Grodner to verify she made the call.

The sanction being enforced against Mr. Porter is a criminal contempt of court even though the TRO only provided for a civil penalty of contempt. A criminal contempt of court has a specific intent requirement that the act must be done with the intent to defy the authority of the court.

> Willful disobedience of a court order requires a consciousness of the duty to obey the order and an intent to disregard that duty. The purpose of charging and convicting a defendant for criminal contempt is vindication of the public interest by punishment of contemptuous conduct. R. Perkins, *supra* at 533. Therefore, in order to constitute willful disobedience necessary for criminal contempt, the act or refusal to act must be done with an intent to defy the authority of the court. E. Dangel, Contempt § 171 (1939).

*State in Interest of R.J.S.,* 493 So.2d 1199, 1203 (La.1986)

The employment of legal counsel by Mr. Porter set out in conclusory fashion in the warrant as his only affirmative act is the antithesis of the required intent to defy the authority of the Court. The employment of legal counsel is exculpatory. While following advice of legal counsel is not a defense to a prosecution for contempt of court it is a mitigating factor.

> Reliance upon advice of counsel may be considered in mitigation of the sanction but does not constitute a defense to contempt of court. United States v. Seavers, 472 F.2d 607, 611 (6th Cir. 1973); In re Door, 195 F.2d 766, 770 & n. 6 (D.C. Cir. 1952); United States v. Goldfarb, 167 F.2d 735, 735 (2d Cir. 1948) (per curiam); Eustace v. Lynch, 80 F.2d 652, 656 (9th Cir. 1935); Spangler v. Pasadena City Board of Education, 384 F.Supp. 846, 849-50 (C.D.Cal.1974), vacated as moot, 537 F.2d 1031 (9th Cir. 1976); id. (cases cited); Theriault v. Carlson, 353 F.Supp. 1061, 1066 n. 2 (N.D.Ga.1973), rev'd on other grounds, 495 F.2d 390 (5th Cir.), cert. denied, 419 U.S. 1003, 95 S.Ct. 323, 42 L.Ed.2d 279 (1974).

*Sec. & Exch. Comm'n v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 670 (5th Cir.1981)

The statute under which Mr. Porter was arrested subjects an offender to arrest only "…if the defendant has been given notice of the temporary restraining order or ex parte protective order by service of process as required by law. La. RS 14:79. Becnel did not state anywhere in the

application for the warrant that service of the temporary restraining order was made on Mr. Porter before the alleged offense and in fact any reasonable officer would have known that proper service had not been made.

Becnel made no phone calls to see if Mr. Porter had been served with the order.[19] Becnel claims someone checked with the court to confirm service and the city court faxed a copy of the service[20] but the service return in the suit record was facially defective as it showed domicillary service, not personal service, and the stated address where the service was stated to have been made, 233 St. Louis St., Baton Rouge was known to Becnel to not be Porter's domicile. Becnel knew that the service address was that of the Baton Rouge City Court building and not an address where he would expect Mr. Porter to live.[21]

The right to be free from arrest without probable cause is a clearly established constitutional right. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Although deference is given to a magistrate's determination of probable cause, federal courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause. *United States v. Leon,* 468 U.S. 897, 914–15, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting Illinois v. *Gates,* 462 U.S. at 239, 103 S.Ct. 2317).

There are three elements to the offense for which Mr. Porter was arrested: 1) personal service of a temporary restraining order 2) a contact with Smith prohibited by the restraining order

---

[19] Becnel deposition dated November 24, 2015 p 29-30
[20] Becnel confirmed that what was faxed was similar to the service return in the City Court record. Becnel deposition Nov. 24, 2015 p. 32
[21] Becnel deposition Nov. 24, 2015 p. 32-33

9

and 3) an intent to defy the authority of the court. Remarkably the April 16, 2014 arrest warrant application in this case fails to show that any of the elements of the offense occurred.

There are two essential elements of a Section 1983 action: (1) the conduct in question must be committed by a person acting under the color of state law; and (2) the conduct must deprive the plaintiff of a right secured by the Constitution or the laws of the United States. *Augustine v. Doe,* 740 F.2d 322, 324–25 (5th Cir.1984); *Thomas v. Sams,* 734 F.2d 185, 190–91 (5th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). *Martin v. Thomas* 937 F.2d 449 (C.A. 5, (Tex) 1992), p. 452. Both requirements are present in the undisputed facts of the present case set forth above.

**DEFENDANT IS NOT ENTITLED TO GOOD FAITH IMMUNITY**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v.. Callahan,* 555 U.S. 223, 231 (2009). Evaluating qualified immunity is a two step process. *Michalik v. Herman,* 422 F.3d 252, 257–258 (5th Cir.2005). First, a court must determine whether the Plaintiff has alleged a violation of a clearly established constitutional or statutory right. A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 258 (*quoting Wooley v. City of Baton Rouge,* 211 F.3d 913, 919 (5th Cir.2000)). The next step is to determine whether the official's conduct was objectively reasonable under the law at the time of the incident. The Plaintiff bears the burden of proving that a government official is not entitled to qualified immunity. *Id.* It is necessary for the district court in the first instance to thoroughly review each claim of qualified immunity, and the court must undertake analysis as to each of the constitutional claims that form the basis of a Section 1983 action. *Handt v. Lynch,* 681 F.3d 939, 943–944 (8th Cir.2012).

Glaster v. City of Mansfield, CIV.A. 14-627, 2015 WL 852412, at 5 (W.D. La. Feb. 26, 2015)

The 5th Circuit had clearly established law referring to arrest warrants like the one at issue herein as "facially invalid" and "bare bones" which no reasonably competent police officer could conclude should be issued at the time this arrest warrant was issued. *Spencer v. Staton* 498 F. 3d 658 (C. A. 5 (La) 2007) p. 661-662. Thus, Plaintiff had an established right to be free from arrest

under a warrant that did not state probable cause and the contour of that right as it related to warrant applications was clear.

The lack of objective reasonableness of the actions of defendant Becnel is shown from the fact that he made no investigative effort to tie Mr. Porter to the phone calls. Any reasonable officer investigating Smith's claim would have at least called the phone number from which the calls were made and ascertained whether there was an actual connection to Mr. Porter before giving the slightest consideration to having him arrested for the calls. This minimal level of investigation would not even have required defendant Becnel to leave the comfort of his office. Defendant Becnel's investigation of the service of the restraining order was equally minimal and leaves one to wonder why he would have automatically considered calls allegedly made by attorney Grodner to Smith to be acts of Mr. Porter done through his attorney when the service return in the record showed domiciliary service at the courthouse on a different attorney, attorney Tiffany Foxworth, and neither attorney's name appeared as counsel of record in the proceeding where the restraining order was issued. Even the most insignificant effort on the part of defendant Becnel to do his job would have readily resulted in discovery that there had been no violation of the restraining order by Mr. Porter. A reasonable level of investigation would have shown that Smith was an absolute and outright liar in her original allegations.[22] His (Becnel) actions were at best patently unreasonable and a violation of Mr. Porter's civil and constitution rights in absolute violation of the 4th amendment to the United States Constitution.

**CONCLUSION**

The undisputed facts establish from the April 16, 2014 warrant application itself and the admissions of defendant Becnel in his deposition that plaintiff was deprived of his liberty by virtue

---

[22] See Becnel deposition dated November 24, 2015 Exhibits 4 and 5, deposition p. 19-20

of a false arrest, which arrest was based upon an arrest warrant that did not state probable cause. In fact the April 16, 2014 arrest warrant did not show reason to believe that Plaintiff had committed even a single element of the offense set forth in the warrant. Defendant Becnel admitted that he was an experienced officer well familiar with enforcing the statute under which Plaintiff was arrested. The contours of the probable cause requirement to support an arrest warrant were well established at the time defendant sought and obtained the warrant. Plaintiff is entitled to a judgment recognizing that his rights under the 4th amendment to the Constitution of the United States were violated by Defendant Becnel and the facts and law do not support the defense of qualified immunity.

RESPECTFULLY SUBMITTED:
Attorneys for Plaintiff

 *s/ Stephen M. Irving*
Stephen M. Irving, Bar No. 7170
Attorney at Law
111 Founders Drive, Suite 700
Baton Rouge, LA 70810-8959
Telephone: 225-752-2688
Facsimile: 225-752-2663
Email: steve@steveirvingllc.com

Joel G. Porter  Bar No. 21825
Attorney at LMaw
1208 Julia Street
Baton Rouge, La  70802
(225) 978-1955
(225) 456-2886 Fax
Joelg9962@gmail.com

John H. Smith Bar. No. 23308
Smith, Shanklin, Sosa, LLC
16851 Jefferson Hwy Ste 5A
Baton Rouge, La. 70817
225-223-6333
Fax 888-413-8345
John@smithshanklin.com